Good morning, Your Honors. May it please the Court. My name is Stephen Soloway on behalf of the Defendants and Appellants, Dong Chen and Jing Li. I'd like to reserve two minutes, if I may, for rebuttal. The new trial isn't necessary in this case for two reasons. First, the district court improperly excluded the internal agreement, thereby preventing defendants from presenting their defense case to the public. Can you tell me where in the ER is the internal agreement? I'm sorry? Where in the ER is the internal agreement? I have to check. I don't have it in front of me. But I do know that it's there. Should I look for it now? I think it's at ER 221. Pardon me? ER 221. Thank you very much. So the exclusion of that internal agreement as well as the other evidence of the nominal membership structure precluded the defendants from presenting their defense. Second, aggregating the special verdicts awarding vastly different damages for the same harm constituted an impermissible double recovery and a miscarriage of justice. Okay, so on that second point, I've got a question. So it's pretty common in trials for there to be multiple claims with overlapping but not identical damages. I have it happen about twice a year, okay? And it's something that's easily dealt with if people think about it in advance. There's actually a California pattern jury instruction that covers it, okay? So why isn't this invited error on your part for not proposing some way to deal with this in advance for this completely predictable problem? Thank you. I agree that both sides should have submitted that. The appellant, so. The appellant as well should have submitted that jury instruction. But the failure to do so is not fatal. I think it's Federal Rules of Civil Procedure section. Bear with me one second. I apologize. It's 51D2. You're going to cite the plain error rule? Yes. But this is invited. I mean, it's not that just somebody botched the jury instructions. It's that you failed the tender rule. True. Although perhaps not binding in Schutzke Distributors v. Kelly, that's 643 F. Supp. 57, Northern District, California, 1986. The court held, in this case, both sides neglected to make a timely demand for the submission of the aggregation issue to the jury. The district court under the authority of Guidry has the power to resolve that issue on its own. Unfortunately, the district court could not resolve that problem in this case. You're blaming the district judge for not giving an instruction that you guys didn't tender. That's basically what you're saying. I take blame for not giving that instruction. I believe that my colleague should have given that instruction. We both didn't. And just like in Schutzke, the district court should have but didn't. I'm not putting all the blame on the district court. But that instruction wasn't given. I don't understand why we should think it's duplicative anyway, though. Because it seems like the evidence suggested there could have been essentially 1.6 million, and the jury gave 1.3 million total. It seems like they gave less than was asked for, and they just allocated it somehow. And why should we think that it's duplicative? Because, as the district court held, there was no evidence of any damages from any other breach of fiduciary duty. But it seems like they figured out a total amount, and they put some of it in one claim and some of it in the other. And what's wrong with that? There's no support for them to do that, especially since the word fiduciary. Weren't there different time periods? I'm sorry? Weren't there different time periods? One of them in the interoperatories was specifically with regard to 2015. There was also alleged misrepresentation of impact in 2014 and part of 2016, right? Correct. Why couldn't they just be dividing it by years? Well, because the district court held that here the record shows that the claims for intentional misrepresentation and breach of fiduciary duty were intended to compensate for the same economic harm, the damage caused by defendant's misrepresentation of the profits of T-TECs. Although plaintiff argues That's the harm, but it's different time periods. If I may quote the district court's last sentence of that, where he said, Although the plaintiff argues that there were multiple breaches of fiduciary duty, he has not shown what separate economic harm those breaches caused. So although they alleged other breaches of fiduciary duty, they didn't put on any evidence or demonstrate in any way that any damages were sustained by any other breach of fiduciary duty. The only damage sustained under both legal theories was the sale of the interest in T-TECs for less than it was worth. There's no basis to speculate upon how the jury could have apportioned those damages, especially since there was no mention of fiduciary period at trial at all, and the jury wasn't instructed on breach of fiduciary duty. I have a question about that. In one of the briefs, there's a reference to what's called, I think, a preliminary instruction, which was about fiduciary duty. Does that mean that it was an instruction that was given at the outset of the trial, or was it an instruction that was proposed but not given? I couldn't figure that out. There was one jury instruction, a preliminary jury instruction, that mentioned breach of fiduciary duty in connection with what the plaintiff's claims were. Right, at the outset of the trial. So it was mentioned. So it's not true that it wasn't mentioned. Well, maybe I wasn't clear. Fiduciary was not uttered by a single witness at the trial. The only time that breach of- I mean, that's the legal conclusion. You wouldn't have witnesses testifying about that. That's a label that gets attached to the relationship, whether it's an agency relationship or a corporate officer or whatever. The fact that a witness didn't say fiduciary doesn't mean anything. Okay. That's not the only point. The jury wasn't even instructed on breach of fiduciary duty. But it was, in fact, at the outset of the trial. No, I respectfully disagree. The fact that breach of fiduciary duty was mentioned in a preliminary jury instruction referring to what the claims were being made has nothing to do with a final jury instruction instructing the jury on what a breach of fiduciary duty claim is. Had the jury- I'm going to jump back to the internal agreement if I may. Actually, one more thing on this fiduciary duty thing. Give me just one second here. So this verdict form, which is the longest verdict form I've ever seen in my life, 15 pages, 14 pages. Page 7 is entitled Breach of Fiduciary Duty. And it's a special verdict form because it walks through a list of questions. Okay? And those questions basically track on the elements of fiduciary duty. So if the jury finds yes on all the right questions on that, which they did, then they've found all the elements of a fiduciary duty claim. So why is it necessary that they get a separate instruction that has that title? I think that if you're going to seek damages for a claim for breach of fiduciary duty, there should be a jury instruction. Okay, and I don't know if you were the trial lawyer, but did somebody on behalf of the defendant say, Hey, wait a second, judge. You're giving this jury a verdict form that says breach of fiduciary duty, and there isn't a gosh darn instruction about that in the whole set of instructions. I was the trial attorney. Okay, so is that plain error? And that was another error of mine, that I should have requested a breach of fiduciary duty claim instruction. I mean, it just strikes me, though, that let's just put aside not submitting the instruction. It just strikes me that it's harmless because the questions 21 through 24 of the verdict form are basically the elements of a fiduciary duty claim. The first three are basically the elements of the merits, and then 23 is a causation, and 24 is another causation question. It seems like it's harmless. I respectfully disagree, and I would submit that under all of the circumstances of this case, where they weren't instructed on the breach of fiduciary duty claim, where they weren't instructed on the prohibition against double recovery for the same harm, that together that resulted in a miscarriage of justice, and there's no basis upon which the jury could have apportioned those damages. There's certainly no basis to apportion three times, almost three times more in damages for a breach of fiduciary duty claim for the same harm than under the fraud claim, especially since the court found that there was no evidence of any separate damages from any breach of fiduciary duty, from any other breach of fiduciary duty. If there are no questions, I'd like to keep going on the internal agreement, unless you have further questions. Had the jury heard that Alvin Lee, who was plaintiff Mr. Zhu's father-in-law, was actually the true owner of the majority interest in T-Tex, then they couldn't have found that the defendants defrauded Mr. Zhu into selling his interest for less than it was worth because it wasn't his interest, and they couldn't have breached any fiduciary duty to Mr. Zhu. Is that bound by estoppel by contract? Well, there's two points to that. One is the internal agreement does not contradict any of the terms, actual terms of the purchase and sale agreement. It merely explains a transaction and states who the real parties in interest were. The United States Supreme Court has held that evidence concerning who the true parties are is admissible, and the court characterized it as an explanation of the transaction, not a contradiction of the agreement. It usually arises in principle and agent theories, but it's usually brought by the other side. In this case, Mr. Zhu hid behind the parole evidence rule, using it as a shield to prevent defendants from showing the true facts, which were that Mr. Zhu, who was fully aware of T-Tex's actual profits, was the true owner, and the purchase and sale agreement was only in the names of the nominal shareholders because that's how it was held and that's how it was set up in the internal agreement from the beginning before T-Tex was even formed. Even if the parole evidence rule applied, which we submit it does not, because it only shows who the true parties were, the internal agreement should have been admissible under the fraud exception to the parole evidence rule. The courts have held that parole evidence should not be a shield to prevent the proof of fraud and that it should be admitted to show that. In this case, again, it would have shown that defendants could not have breached any fiduciary duty or defrauded Mr. Zhu in connection with the sale of T-Tex interest. I think you wanted to reserve your time. Thank you. Thank you, Your Honors. May it please the Court, I'm Brian Erien and I represent Martin Zhu, formerly Judge Zhu, the plaintiff and the appellee. The appellants assigned two errors to the court. And with all due respect, Judge Kennelly, I don't think a justice court judge makes you irrelevant. You're in the trench, as was Judge White. With respect to the motion in limine to exclude the secret illegal contract, it was not error for the court to exclude that. First, there is a provision in the purchase and sale agreement that says it is an exclusive and full understanding. There's an integration clause. Secondly, the recitals do say who is the record and beneficial owner and that is Martin Zhu. He was the seller. He was a member under the operating agreement, also an integrated agreement. He was the person who negotiated for the sale of his interest upon graduating from business school. He was the person who was getting paid. He was the person who, in the tax returns, was getting taxed and was listed as a member. There's just no way in the world that the defendants now can say, oh, he wasn't really a member. They negotiated with him. He was on the PSA. He was the one who was getting paid. And to come back now and say that an agreement signed by other people in another place that he never saw somehow makes him a nonmember, defies logic, would confuse the jury, and violates the statute of frauds, the parole evidence rule, estoppel by contract, and, in fact, is an illegal contract. As a matter of fact, defendants prior counsel, Mr. Soloway's predecessor, even said in open court that the practice is illegal in the United States. Is there a document somewhere that the internal agreement itself doesn't specifically say – it says these three people are setting up this company, but it doesn't talk about the nominal owners, right? This is the internal agreement? Right, right. I believe that's correct, Your Honor. So is there a document that – I thought I'd seen one, but I don't see it now – that lists out who are the owners and who are the nominal owners. There is no document that lists who are the real owners and who are the nominal owners as far as I know, because as far as Mr. Zhu knew, he was an owner. He had never seen that document until the motion to dismiss that was brought before Judge White. So you've got me as well, Your Honor. Okay, go ahead. The second alleged error is that somehow the jury impermissibly gave a double recovery. And again, I don't think that the trial court erred, and I'm going to go back to both the Zhang and the – I think it's Gallick v. B&O Railroad – that a jury's verdict is not to be disturbed unless it is the result of passion and prejudice, internal disconsistency, or there is no evidence. In other words, it's one thing if the jury comes back and says there was no duty, there was no breach, there was no proximate cause, but plaintiff gets a million dollars. That's not what happened here. And as Judge Kennelly pointed out, the elements of breach of fiduciary duty are all laid out in the special verdict form. And I would also respectfully disagree with Mr. Soloway with respect to the issue of whether there was a final jury verdict instruction. There was. It wasn't called fiduciary duty, but it was the duties of the manager of an LLC. And that's where the fiduciary duty comes from in this case, right? Exactly, Your Honor. And that, if I can, is at – I believe it's 2ER124, and it lays out by the California Corporations Code what the duties of the manager of an LLC are, and they are to account to the LLC for all profits and losses, essentially to do all the things that a fiduciary in a corporation or an LLC would do. There is no fiduciary form in Casey. So we use the California Corporations Code statute, which lays out the fiduciary duties of a manager. So there is an instruction. It seems like the jury awarded about $358,000 less than it could have from the difference in value. Do you have any idea why? I wish I had been able to look inside the jury room, Your Honor. I was actually hoping for something closer to $2.5 million. Was there like expert testimony or any testimony that had the number that the jury came up with or just somehow came up with a smaller number? No, Your Honor. With respect to the fraud in the sale of shares, which were based on the 2015 U.S. tax return, which said that profits were $204,000 when in reality profits were $750,000, the only testimony as to the value of the company came from plaintiff's expert Carl Saba with Heming Morris, who went and did all of his expert things that economists do and said that with profits truly being about three times what they should have been, the sale price should have been three times what it should have been. And that also is consistent with companies in these industries of textile import. And so as a result, the value of his interest was about $2,440,000. He got $752,000. The damages were $1,680,000. That was the only testimony. But the jury obviously was confused about something because it gave this very large breach of contract award, which had no basis. So could that account for the extra money that you didn't end up getting? Your Honor, I think I understand what the trial court did, and I'm speculating, but here's where I think it came in. The only evidence with respect to the breach of fiduciary duty, aside from the fraud in the sale, comes at 3 S.E.R. 416 to 427, where— Sorry, I think the answer just has to be no. I think Judge Berzahn is asking, maybe I'm not understanding her question, but I thought her question was, does the amount of contract damages make up this $350,000 missing amount? And I think the answer is no because that wasn't the amount of the contract damages. No, Your Honor. You're right. The contract damages that were awarded by the jury of, I think, $881,000, if you total the breach of contract with the breach of fiduciary duty, with the misrepresentation, and then you subtract a small amount for failure to mitigate, it comes up out to $2.2 million, which is still less than plaintiff's expert testified. There's one additional element in the breach of contract claim, and that is a failure to pay accumulated but undistributed profits. So all three of these claims are interdependent, even though they're distinct. The 2015 fraud is for the misrepresentation regarding the profits for 2015. The breach of fiduciary duty also includes, as referenced in that section of the supplemental record I just said, essentially siphoning off profits for years before and after. Well, if you've been siphoning off profits for years, then the undistributed accumulated profits would also be higher, which means the breach of contract damages are also going to be larger. So the three claims are interdependent, but the total amount awarded by the jury is still less than what was proven and what the evidence provided for, and so this is not a case where a jury gave internally inconsistent rulings, awarded an amount out of passion or prejudice, or— So are your—leaving the contract damages out of this, your explanations or the explanations are one of two. One is they just arbitrarily chose some numbers dividing up the overlapping damages and didn't come out to more than the actual damages that were shown, so it's okay. That's one version. The other is that it has to do with this time period, as I was saying before, that they somehow tried to divide it up by time period. Yes, Your Honor, and I think they probably took it upon themselves to believe most, but perhaps not everything that was said in the expert reports. It's a guess. I can't look into what the jury was doing any more than anybody in this courtroom can. That's the purpose of federal evidence. We're not talking about liquidated amounts here necessarily. We're talking about something that you had to depend on expert testimony for, so they could have bought 80 percent of the expert testimony but not the other 20, right? That's about it, Your Honor. That's the same situation that was in the Cardinal v. Lupo case, and so that's it. I don't think the court erred. I mean, the fact of the matter is the jury in its special verdict form came back unequivocally. The defendants lied, they cheated, and they stole, and they found it sufficiently convincingly that they awarded punitive damages, so this is not a situation where a jury came back and said, well, you know, maybe there was no duty, but we really feel bad for the plaintiffs, so we're going to give award. That's the kind of case where it's got to get returned. Here, I don't think that's the case. If there's anything else, Your Honors, I'd be happy to respond. Other than that. Thank you. Thank you. Thank you, Your Honors. First of all, even if the internal agreement was illegal, illegal contracts can still be enforced where they would prevent unjust enrichment. How does the internal agreement establish that the current plaintiff was not an owner at the relevant time? I thought there was evidence that Alvin Lee designated his son-in-law Mr. Chen. That's what I was asking. I have to go and look for it. Well, that's why you're here is to help us with this. I apologize. I should have that at my fingertips, but I don't. To make it, maybe to simplify this case, this whole case turned upon whether Mr. Zhu knew the actual profits of T-Tex. There's no dispute that his father-in-law, Alvin Lee, knew the actual profits of T-Tex. That's evidenced by the same e-mails that Mr. Zhu relied upon in bringing his claims. So, in fact, Mr. Zhu argued that although his father-in-law knew, he didn't. But he wasn't involved in T-Tex. His father-in-law, Alvin Lee, was the, quote, boss, end quote. He put up $500,000 out of the $530,000 used to start up T-Tex. Mr. Chen ran the day-to-day operations and reported to Mr. Chen. Mr. Chen, excuse me, Mr. Alvin Lee. Mr. Alvin Lee made all of the major financial decisions for T-Tex. So the fact that Mr. Chen did not report to Mr. Zhu is not weird. He reported to his father-in-law, Alvin Lee, who was the real boss. Mr. Zhu never even went to T-Tex during this time, if ever. He wasn't involved in any way. First he was in China, and then he was in business school in Texas. Had nothing whatsoever to do with T-Tex. So had the jury heard that Alvin Lee was the true owner, then they would have seen that he knew the profits and wasn't defrauded, and it wasn't even Mr. Zhu's interest. They certainly didn't breach any fiduciary duties to Alvin Lee because Mr. Chen reported everything, and Alvin Lee directed how the profits were to be reported. Defendant Jing Li never had any involvement in T-Tex either. Mr. Chen paid the $30,000, the remaining from the $530,000, and he ran the operations of T-Tex. She was never involved. None of the nominal members were ever involved. So that's a critical piece of evidence. Had the jury heard, it would have changed the entire case. Thank you. Thank you both sides for the helpful arguments. This case is submitted, and we're adjourned for the week. Thank you very much.
judges: BERZON, FRIEDLAND, Kennelly